# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-755 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| KHALILAH CRUMPLER, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

*Pro se* defendant Khalilah Crumpler ("Crumpler") moves to vacate, set aside or correct her sentence under 28 U.S.C. § 2255. (Doc. No. 117 (§ 2255 Motion).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 121 (Response)), and Crumpler has filed a reply. (Doc. No. 122 (Reply).) Crumpler also seeks leave to amend her motion to vacate and/or supplement the record. (Doc. No. 123 (Motion to Amend/Supplement).) For the reasons set forth below, both motions are denied.

## I.    BACKGROUND

In 2010, Crumpler was stopped by police with $677,660 of suspected proceeds from drug trafficking in her vehicle. (Doc. No. 82 (Presentence Investigation Report ("PSR")) ¶ 14.) In 2014, Crumpler was specifically identified as a target in a federal investigation of a sophisticated drug trafficking organization ("DTO") in which it was believed that, between 2010 and 2019, Crumpler oversaw shipments of substantial quantities of cocaine and other controlled substances into the

Cleveland area from Los Angeles. (*Id.* ¶¶ 11–17; *see* Doc. No. 13 (Indictment), at 1.[1]) Through the investigation, the FBI learned that Crumpler employed Cleveland-based FedEx drivers, including Christopher Fitzgerald ("Fitzgerald"), as couriers for the drugs. (Doc. No. 82 ¶ 12.) The drivers, in turn, utilized Pelican cases—hard, plastic cases with a lock—to distribute the drugs along their delivery routes. (*Id.*) *See United States v. Fitzgerald*, 754 F. App'x 351, 355–56 (6th Cir. 2018) (discussing the DTO).

On April 20, 2016, Fitzgerald and two others were charged in connection with the activities of the DTO. (*See* N.D. Ohio No. 1:16-cr-123, Doc. No. 1 (Indictment).) Crumpler was not charged in the 2016 case, which was ultimately assigned to the docket of the undersigned.[2] Crumpler recommended that Fitzgerald hire attorney Myron Watson, an attorney with whom (unbeknownst to Fitzgerald) Crumpler had a pre-existing attorney-client relationship. (Doc. No. 107 (Sentencing Hearing Transcript) at 23–24.) Fitzgerald hired Watson, who represented him throughout the trial proceedings.

The case against Fitzgerald and his co-defendants went to trial in February 2017, and the undersigned presided over the jury trial. Fitzgerald was the only defendant to take the stand, during which he offered testimony to the effect that he was not involved in any drug trafficking activities. At the conclusion of the eight-day jury trial, the jury found the defendants guilty of all charges. (N.D. Ohio No. 1:16-cr-123, Doc. No. 80 (Jury Verdicts).) On June 22, 2017, the Court sentenced

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system. Moreover, unless otherwise noted, all docket numbers are to N.D. Ohio No. 1:19-cr-755.

[2] The 2016 case was originally assigned to United States District Court Judge Dan Aaron Polster. It was transferred to this Court's docket as a related case. (N.D. Ohio No. 1:16-cr-123, Doc. No. 19 (Order of Transfer).) At the time the 2016 case was filed, the Court was already presiding over a criminal case brought against another member of the DTO, Walter Walker. (*See* N.D. Ohio No. 1:16-cr-41.)

Fitzgerald to a custody term of 188 months. (*Id*., Doc. No. 135 (Fitzgerald Judgment); Minutes of Proceedings [non-document], 6/22/2017.) His conviction and sentence were affirmed on appeal. *See Fitzgerald*, 754 F. App'x at 370.

The FBI continued its investigation into Crumpler and her drug trafficking activities. Investigators discovered that after the investigation into Fitzgerald and others became overt in 2015, and even after Fitzgerald's conviction in 2017, Crumpler continued to receive unexplained income that she deposited in the bank accounts of various businesses she owned or controlled. (Doc. No. 77 (Plea Agreement) ¶¶ 38–46, 50–59.)

On December 11, 2019, a grand jury returned a two-count indictment charging Crumpler with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and §§ 841(a)(1) and (b)(1)(A) and conspiracy to launder money instruments, in violation of 18 U.S.C. § 1956(h). (Doc. No. 13; *see* Doc. No. 1 (Complaint), 6/14/2019.) The case was originally assigned to United States District Court Judge Donald C. Nugent but was later re-assigned to the undersigned as related to the 2016 case. (Doc. No. 16 (Order of Transfer).)

On November 30, 2021, with the benefit of a plea agreement, Crumpler entered a guilty plea to the charges in the indictment. (Minutes of Proceedings [non-document], 11/30/2021; Doc. No. 77.) The plea agreement provided that the government would seek a four-level leadership role enhancement under U.S.S.G. § 3B1.1(a), while Crumpler was free to argue against such an enhancement. (Doc. No. 77 ¶ 14.) The plea agreement also contained a broad waiver provision restricting Crumpler's appellate rights, including her right to take a direct appeal and a collateral attack of her sentence. With respect to the latter, the waiver provision generally precluded the filing of a "proceeding under 28 U.S.C. § 2255." (*Id*. ¶ 20.) Carved out of the waiver was the right

3

to appeal the following: "(a) any punishment in excess of the statutory maximum; or (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment rage determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in [the plea] agreement, using the Criminal History Category found applicable by the Court." (*Id.*) The waiver further provided that "[n]othing in [the waiver] shall act as a bar to [Crumpler's] perfecting any legal remedies [she] may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct." (*Id.*)

Prior to sentencing, the Court ordered the preparation of a PSR. (Doc. No. 82.) The PSR writer recommended a base level offense of 32, to which two levels were added under U.S.S.G. § 2S1.1(b)(2)(B) (money laundering intended to promote distribution of a controlled substance), two more levels were added under § 2S1.1(b)(3) (sophisticated laundering), and four more levels were added under § 3B1.1(a) (organizer or leader role). (*Id.* ¶¶ 32–36.) After three levels were subtracted for acceptance of responsibility, the adjusted total offense level was 37. (*Id.* ¶¶ 40–42.) Based upon a total offense level of 37 and a criminal history category of 1, the PSR writer calculated the advisory guideline range to be 210–262 months. (*Id.* ¶ 83.)

In advance of sentencing, defense counsel filed a comprehensive sentencing memorandum, in which counsel raised several objections to the calculations in the PSR, including the application of the four-level leadership role enhancement under § 3B1.1(a). (Doc. No. 89 (Sentencing Memorandum), at 3–4.) In the memorandum, counsel also advocated for a downward variance based on Crumpler's history of physical abuse by her former boyfriend, her medical and mental conditions, her difficult childhood (which included sexual abuse), her two minor children, her lack of recent criminal history, her progress addressing her substance abuse issues while in custody,

4

and the pretrial conditions at her institution during the COVID-19 pandemic. (*Id*. at 5–11.) The memorandum was supported by documentation and letters that detailed many of these mitigating considerations. (Doc. Nos. 89-1 through 89-6.) Counsel further supplemented the memorandum with additional letters of support and Crumpler's medical records. (*See* Doc. No. 92 (Supplemental Letters); Doc. No. 95 (Medical Records).)

During the sentencing hearing on May 10, 2023, the government moved for a four-level leadership role enhancement. (Doc. No. 107 (Sentencing Hearing Transcript), at 8–9.) In support, the government offered the testimony of Fitzgerald, who was in custody and began cooperating with the government after his sentencing. (*Id.* at 9–43.) At the start of his testimony, Fitzgerald acknowledged that he had previously testified at his own trial and that "the substance of [his] testimony was that [he was] not trafficking drugs as part of a conspiracy[.]" (*Id*. at 10.) The government also asked him if he expected to receive a reduction in his sentence in exchange for his testimony at the hearing, and he acknowledged that he did. (*Id*. at 11.)

Contrary to his trial testimony, at the hearing, Fitzgerald testified that he worked at the direction of Crumpler to receive packages of cocaine coming into the Cleveland area. (*Id*. at 14.) In particular, he testified that Crumpler arranged for the shipment of the drugs from Los Angeles to Cleveland and then scheduled the distribution of the drugs along Fitzgerald's FedEx delivery route. (*Id*.) At Crumpler's direction, Fitzgerald would then hand off the drugs to various individuals—including Walter Walker—along the route. (*Id*.) According to Fitzgerald, Crumpler had complete control over the deliveries. She determined how, when, and where Fitzgerald would receive payment for the drugs, and what his cut would be for his delivery services. (*Id*. at 14–16.)

Fitzgerald also testified that Crumpler recommended he hire Attorney Watson to represent

5

him in his criminal case. (*Id*. at 23.) He further testified that, prior to trial, a private investigator hired by Attorney Watson presented Fitzgerald with an affidavit indicating that Crumpler—who at this point had not been indicted—had never engaged in drug trafficking with him. (*Id*. at 25–27.) He further testified that he signed the affidavit because his attorney asked him to, and during direct examination, he conceded that the statements in the affidavit relating to Crumpler were untrue. (*Id*. at 28.)

The Court permitted defense counsel to thoroughly explore on cross-examination the issue of Fitzgerald's bias and credibility. Specifically, defense counsel was able to elicit from Fitzgerald that he intended to (and did) perjure himself at his own trial by providing false testimony regarding his illegal activities. (*Id*. at 29.) Fitzgerald further conceded that he perjured himself when he signed under penalty of perjury the pre-trial affidavit regarding Crumpler. (*Id*. at 37–39.) At the conclusion of Fitzgerald's testimony, defense counsel argued that the testimony should be afforded no weight because Fitzgerald has an established history of perjury and an obvious incentive to offer testimony favorable to the government to secure consideration at resentencing in his own case. (*Id*. at 50.)

The Court, who had also presided over Fitzgerald's trial and observed his prior testimony (and was also familiar with the false affidavit), carefully weighed the matter and found Fitzgerald's testimony at Crumpler's sentencing hearing to be credible. (*See id*. at 53.) The Court determined that the evidence, which included Fitzgerald's testimony and Crumpler's admission of facts in the plea agreement, established that Crumpler controlled the flow of drugs and money in the DTO, which it found involved five or more individuals. (*Id*. at 53–54; *see also* Doc. No. 77 ¶¶ 22–61.) The Court also credited evidence that Crumpler steered Fitzgerald to Attorney Watson, who

ultimately orchestrated the signing of the affidavit falsely exonerating Crumpler of any wrongdoing. (Doc. No. 107, at 54.) In so finding, the Court observed that it should not be "lost on anyone in [the courtroom] how very strange it is for an attorney to recommend that his or her client sign an affidavit that basically insulates an individual who is not indicted in the conspiracy, although has a role in the conspiracy." (*Id*.) This activity, the Court found, spoke "volumes" as to Crumpler's control over the drug conspiracy. (*Id*.) Ultimately, the Court determined that the government had met its burden with respect to the leadership role enhancement. (*Id*. at 54–55.)

Following this determination, the Court indicated that it would honor the parties' plea agreement and not apply an additional two-level enhancement under § 2S1.1(b)(3) for sophisticated laundering. (*Id*. at 55–59.) After applying the relevant adjustments under the guidelines, the Court found that the total offense level was 35. (*Id*. at 60–61.) With a total offense level of 35 and a criminal history category of I, the advisory guideline range was 168–210 months. (*Id*. at 61.) While the government advocated for a sentence at the high end of the range (*see id*. at 81), defense counsel sought a downward variance based on the mitigating circumstances that counsel had previously set forth in Crumpler's sentencing memorandum. (*Id*. at 74–79.) Even though the Court underscored Crumpler's substantial involvement in and control of a sophisticated and massive DTO, the Court—citing many of the personal circumstances highlighted by defense counsel—elected to impose a mid-range custody sentence of 189 months. (Doc. No. 97 (Judgment), at 2; Minutes of Proceedings [non-document], 5/10/2023; *see* Doc. No. 107, at 82–86.)

On direct appeal, Crumpler challenged the Court's application of the 4-level leadership role enhancement, and further argued that the Court failed to consider her difficult childhood,

7

abuse, the effects of her pre-trial detention due to the COVID-19 pandemic, and other personal circumstances in imposing sentence. (Doc. No. 113 (Order), at 4.) The United States Court of Appeals for the Sixth Circuit rejected these arguments and affirmed the Court's judgment. (*Id*. at 8.) In so ruling, the Sixth Circuit determined that this Court's decision to credit Fitzgerald's testimony was entitled to deference, and that this Court properly considered the sentencing factors, including Crumpler's personal circumstances. (*Id*. at 6–8.)

The present motion to vacate followed.

## II.   STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin*, 330 F.3d at 736 (citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735.

When a defendant has entered a guilty plea on the record, the representations of the defendant, his lawyer, the prosecutor, and the judge in court "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of

9

verity." *Id*. Subsequently presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id*. (citations omitted).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citing *Turner,* 183 F.3d at 477). However, a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *see also Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'" (internal citation omitted)).

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id*. (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over pretrial

10

proceedings and sentencing, the judge may rely on her recollections of those events. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Blackledge*, 431 U.S. at 74 n.4).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Crumpler has failed to identify facts that, if true, would entitle her to relief under § 2255. Moreover, many of the arguments offered by Crumpler are either contradicted by the record, barred or waived, non-cognizable under § 2255, or are averred to in a perfunctory and conclusory manner, preventing further review by this Court.

## III.    MOTION TO VACATE

In her memorandum in support, Crumpler attempts to raise many claims, among which there is substantial redundancy. (*See generally* Doc. No. 117-1 (Memorandum in Support).) Dissection of these claims is further frustrated by Crumpler's reliance on bullet points instead of fully developed paragraphs. (*See, e.g., id.* at 3.) The Court has endeavored to organize Crumpler's claims to clarify its analysis. In so doing, the Court recognizes that *pro se* motions are construed more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation omitted). "But the liberal-construction rule is not a liberal-invention rule. It does not require the district court to lawyer on behalf of the movant or conjure unevidenced claims from thin air." *Jimenez v. United States*, No. 21-5201, 2022 WL 2610337, at *5 (6th Cir. July 8, 2021) (Bush, J. concurring) (collecting cases). The Court has, therefore, attempted to group Crumpler's claims in a way that addresses Crumpler's stated arguments without inventing claims or engaging in unnecessary repetition. Using Crumpler's nomenclature, the Court addresses Crumpler's claims in three groups based on subject matter rather than numerical order: ineffective assistance of counsel, "procedural error[,]" and "newly

11

discovered evidence[.]"

## A.  Ineffective Assistance of Counsel

Crumpler claims that her counsel was ineffective by failing to address with the Court the limited access he had with Crumpler due to COVID-19 restrictions at her detention facility, by failing to sufficiently challenge the credibility of Fitzgerald at the sentencing hearing, and by failing to advocate for a lower sentence based on mitigating circumstances in Crumpler's personal history. (Doc. No. 117-1, at 3, 5–6.) None of these claims are supported by the record.

### 1.  Standard

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *see also Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the

perspective existing at the time of the representation, not from the perspective of hindsight. *Id.* Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Id.* at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

When a defendant enters a guilty plea, his counsel must perform within "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). A petitioner need not show he would have prevailed at trial, but a petitioner alleging ineffective assistance of counsel must establish his counsel's deficient performance and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quotation marks and citations omitted).

### 2. *Access to Counsel During COVID-19 Pandemic*

There is no dispute that the COVID-19 pandemic caused significant disruptions to everyday life, including court proceedings. Additionally, prisons across the country found it necessary to institute policies designed to combat the spread of the virus, which included vaccination programs, social distancing, and restrictions on visitations by counsel and family.[3]

---

[3] *See generally* Special Report, UNITED STATES DEPARTMENT OF JUSTICE, *Impact of COVID-19 on State and Federal Prisons, March 2020 – February 2021*, https://bjs.ojp.gov/content/pub/pdf/icsfp2021.pdf (Aug. 2022).

Crumpler complains that her counsel was ineffective for failing to advise the Court of the limited contact he had with Crumpler due to these restrictions.[4] (Doc. No. 117-1, at 3.) This first claim finds no support in the record.

The Sixth Amendment guarantee of the right to counsel "includes the right to communicate with one's criminal-defense attorney while confined awaiting trial." *Mashburn v. Henderson Cnty.*, No. 4:22-cv-7, 2023 WL 2616944, at *4 (W.D. Ky. Mar. 23, 2023) (quotation marks and citation omitted). "Access to courts and counsel, however, need not be more than 'reasonable.'" *Id.* (quotation marks and citations omitted). "For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee had other reasonable means to contact his or her attorney and where no prejudice resulted." *Id.* (rejecting claim of lack of access to counsel during COVID-19 pandemic and collecting cases (quotation marks and citation omitted)).

It is notable that Crumpler never complained about the lack of interaction with counsel during the pendency of this case. Rather, in her plea agreement, Crumpler specifically stated she was satisfied with the representation she received from counsel. (Doc. No. 77 ¶ 66.) She repeated that she was satisfied with counsel at the change of plea hearing. (Doc. No. 110 (Change of Plea Hearing Transcript), at 50.) She also confirmed that she had "sufficient time and opportunity to discuss all aspects of the case in detail with counsel." (*Id.*) While she noted that it was difficult during the pandemic to meet personally with counsel, she agreed that she did not need any additional time to confer with counsel before she entered her guilty plea. (*Id.* at 50–51.) Moreover,

---

[4] As previously noted, counsel did raise in the sentencing memorandum the fact that most of Crumpler's pretrial detention occurred during the COVID-19 pandemic as a basis for a downward departure. (*See* Doc. No. 89, at 11.)

at the same hearing, counsel advised that, due to the pandemic and his own medical condition, he did not meet personally with Crumpler for several months but noted that they participated in three video conferences while Crumpler was incarcerated and "many phone conferences during that time."[5] (*Id*. at 51.) He described their communication as "consistent, thorough, and good throughout these proceedings." (*Id*. at 52.) Crumpler did not take issue with this assessment, and, after hearing it, reaffirmed her satisfaction with counsel. (*Id*. at 53.) It is clear from the record that Crumpler had reasonable means, aside from in-person visits, to communicate with counsel.

Further, notwithstanding the institutional restrictions imposed on visits because of COVID-19, defense counsel was also able to meet personally with Crumpler at her facility on two occasions in the month immediately prior to sentencing to discuss whether Crumpler wanted to enter a change of plea and to review the plea agreement in detail, as well as to explore what defenses would be available to her should she decide to go to trial. (*Id*. at 52.) Crumpler had more than reasonable access to her counsel throughout the proceedings, and her counsel was under no obligation to raise the issue of access with the Court.

It also worthy of comment that Crumpler's access to counsel was impacted by her choice of counsel. Instead of retaining local counsel, Crumpler hired an attorney whose offices were located in Texas and California. While the Sixth Amendment right to counsel includes the "right of a defendant who does not require appointed counsel to choose who will represent" her, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006), Crumpler

---

[5] The Court also afforded Crumpler an opportunity before, during, and after each video court proceeding to meet privately with counsel in a breakout room. (*See, e.g., id*. at 12.) Crumpler took advance of some of these opportunities. (*See, e.g., id*., at 60–61.) Additionally, the Court granted numerous extensions in this case to account for the difficulties caused by the pandemic. (*See, e.g*., Doc. Nos. 25, 46, 59, 69.)

cannot rely on that voluntary choice to bolster her claims of ineffective assistance of counsel. The physical distance of counsel, and the nationwide travel restrictions imposed during the pandemic, no doubt contributed to any limitation on Crumpler's access to counsel. It is disingenuous, therefore, for Crumpler to lay blame at counsel's out-of-state doorstep.

And even if she could demonstrate that her counsel was deficient in failing to raise access with the Court (she cannot), Crumpler would not be entitled to relief unless she could also demonstrate prejudice. *See Kerkman v. United States*, 166 F.3d 1214 (Table), 1998 WL 786964, at *2 (6th Cir. Oct. 29, 1998) (trial counsel's failure to meet with defendant face-to-face until the morning of trial did not constitute ineffective assistance where counsel and defendant communicated regularly through letters and phone calls, and defendant did not demonstrate prejudice); *United States v. Goudy*, 792 F.2d 664, 672 (7th Cir. 1986) (counsel's failure to visit a client to discuss the case would not render counsel's assistance ineffective, absent a showing of how the alleged deficiencies prejudiced the outcome of the proceedings); *see, e.g. Pritchett v. United States*, No. 1:09-cr-181, 2017 WL 4364409, at *10 (E.D. Tenn. Sept. 29, 2017) (counsel's failure to personally meet with defendant to discuss appeal did not constitute ineffective assistance absent a showing of prejudice). Crumpler has failed to offer any arguments or otherwise show how additional consultation with her counsel could have altered the outcome at sentencing. *See Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003). Very simply, she has not demonstrated prejudice.

For these reasons, the first asserted claim of ineffective assistance of counsel is denied.

### 3. *Testing the Credibility of Fitzgerald*

Crumpler also complains that her counsel did not rigorously cross-examine Fitzgerald at the sentencing hearing, and "failed to present evidence to impeach Fitzgerald, including conflicting

16

statements and lack of corroboration regarding the 'five or more participants' required for the [leadership] enhancement." (Doc. No. 117-1, at 3.) Once again, the record does not support her contention.

As observed, the focal point of defense counsel's cross-examination of Fitzgerald was Fitzgerald's perjured testimony at his trial and the affidavit he signed exonerating Crumpler. Defense counsel also explored at length Fitzgerald's incentive at the hearing to offer testimony favorable to the government's position. There was nothing deficient about counsel's cross-examination. Further, Crumpler has failed to demonstrate any prejudice. She neglects to identify even a single statement, or piece of evidence, that she claims should have been used during cross-examination that would have altered the outcome at sentencing. Nor can she, as the Court was well aware of all of Fitzgerald's prior false statements, having presided over his trial and having observed his prior testimony first-hand. Given this familiarity, the Court was ideally positioned to render a determination as to Fitzgerald's credibility at the sentencing hearing, a determination the Sixth Circuit found was entitled to deference.

The second ineffective assistance of counsel claim is also denied.

### 4. *Failing to Advance Mitigating Circumstances*

Additionally, Crumpler claims that her counsel "did not adequately emphasize [her] history of abuse, her health conditions, or the coercion she faced under threats of violence, which were mitigating factors under 18 U.S.C. § 3553(a)." (Doc. No. 117-1, at 6.) She also maintains that counsel did not "sufficiently argue the adverse conditions of [her] pretrial detention" during the pandemic. (*Id.*) The Court disagrees with both arguments.

As noted, defense counsel raised ten separate bases for a downward departure, including Crumpler's history of abuse, her health conditions, and the fact that most of her pre-trial detention occurred during the COVID-19 pandemic. (Doc. No. 89, at 5–12.) He supplemented these bases with documentation, including medical records and family letters. (*See* Doc. No. 89-1 through 89-6; Doc. Nos. 92, 95.) He re-emphasized these circumstances and arguments during the sentencing hearing. (Doc. No. 107, at 74–78.) In short, counsel diligently pursued leniency for his client, and his performance cannot be considered deficient.

Even if Crumpler had demonstrated deficiency (she did not), she would be unable to demonstrate prejudice. To show prejudice in the sentencing context, a movant must establish that her "sentence was increased by the deficient performance of [her] attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001)). At sentencing, the Court cited the personal circumstances raised by defense counsel—including Crumpler's difficult childhood, the physical abuse by her boyfriend, and her minor children—in its decision to impose a mid-range guideline sentence, rather than the high-end sentence sought by the government. (Doc. No. 107, at 84–86; *see also id*. at 81.) The record is clear that counsel's efforts resulted, if anything, in a *lower* sentence, and Crumpler cannot, therefore, demonstrate any prejudice.

Her third ineffective assistance of counsel claim is also denied.[6]

---

[6] Crumpler also posits that "[a]ppellate counsel failed to argue that the district court's application of the leadership enhancement was procedurally flawed, as it relied on clearly erroneous facts and failed to meet the evidentiary burden." (Doc. No. 117-1, at 6.) To the extent Crumpler is attempting to raise a fourth ineffective assistance of counsel claim, it is denied. Putting aside the fact that Crumpler fails to identify the "clearly erroneous facts" this Court relied upon, and neglects to explain why the government did not meet its evidentiary burden, a plain reading of the Sixth Circuit's decision demonstrates that appellate counsel challenged the application of the § 3B1.1(a) enhancement. (*See* Doc. No. 113, at 4–7.)

18

**B.  Procedural Errors**

In a section entitled "Procedural Errors[,]" Crumpler argues: the Court improperly applied the four-level leadership role enhancement, the Court improperly weighed the sentencing factors at 18 U.S.C. § 3553(a), and the government knowingly relied on the testimony of a witness with an established history of perjury. (Doc. No. 117-1, at 7.) In a separate section entitled "Procedural Errors & Due Process Violations[,]" Crumpler raises a fourth issue: the Court and the government "failed to recognize the impact of [Crumpler's] restricted access to legal counsel, violating the Sixth Amendment." (*Id*. at 5.)

> 1.  *U.S.S.G. § 3B1.1(a) Leadership Role Enhancement & 18 U.S.C. § 3553(a) Sentencing Factors*

In her first two "procedural" issues, Crumpler alleges that the Court erred by applying U.S.S.G. § 3B1.1(a) for her leadership role in the drug conspiracy and also erred in its weighing of the 18 U.S.C. § 3553(a) sentencing factors. (Doc. No. 117-1, at 5.) Neither claim is cognizable on collateral review. Section 2255 authorizes postconviction relief only when a sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such a sentence, or  .  .  . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (quoting 28 U.S.C. § 2255(a)). "Thus, § 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involved 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)); *see also Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (noting that to prevail on a § 2255 motion alleging a non-constitutional error, the petitioner must establish "a fundamental defect

which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." (quotation marks and citations omitted)).

Here, the Court imposed a mid-range guideline sentence after considering the § 3553(a) sentencing factors. Indeed, the Court rejected the government's request for a high-end guideline sentence based on its consideration of Crumpler's personal circumstances. The fact that Crumpler takes issue with the particular weight given to certain sentencing factors does not fit into any of the enumerated bases for affording postconviction relief, nor has Crumpler demonstrated the existence of a fundamental defect which inherently resulted in a complete miscarriage of justice or an error so egregious it amounts to a due process violation. Accordingly, this claim is not available on collateral review. Similarly, Crumpler's sentencing guideline claim involving application of § 3B1.1(a) is also not cognizable under § 2255. The Sixth Circuit, along with "every circuit to 'look[] at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.'" *Bullard v. United States*, 937 F.3d 654, 660–61 (6th Cir. 2019) (quoting *Snider*, 908 F.3d at 191, and collecting cases).

Moreover, both of these claims were raised and decided on direct review. "It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law." *Giraldo v. United States*, 54 F.3d 776 (Table), 1995 WL 290354, at *2 (6th Cir. May 11, 1995) (citation omitted); *see Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (similar); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (similar) (quotation marks and citations omitted). Crumpler has not successfully identified any intervening change in the law, or some other highly exceptional circumstances that would justify this Court revisiting issues that were squarely raised

and rejected on the merits by the Sixth Circuit.

These claims do not entitle Crumpler to relief under § 2255 and are denied.

### 2. *Prosecutorial Misconduct*

Crumpler alleges that the "government knowingly relied on a witness with a history of perjury without adequately disclosing the extent of his credibility issues." (Doc. No. 117-1, at 7.) She also claims that she was "denied the opportunity to cross-examine the full scope of evidence incorporated from Fitzgerald's trial." (*Id.*) To the extent that either claim is cognizable on collateral review, neither claim has merit.

In presenting Fitzgerald's testimony at Crumpler's sentencing, the government candidly drew out on direct examination that Fitzgerald perjured himself in his trial when he testified that he was not involved in drug trafficking, that he offered false statements when he signed the affidavit exonerating Crumpler, and that he expected to receive a reduction in his sentence in exchange for his testimony at Crumpler's sentencing hearing. (Doc. No. 107, at 10–11, 25–28.) Far from hiding the ball, the government addressed Fitzgerald's credibility issues head-on. Of course, none of it came as a surprise to the Court, who had presided over Fitzgerald's trial and witnessed his trial testimony, had previously reviewed the affidavit, and knew that Fitzgerald had made a post-judgment decision to cooperate with the government. Crumpler fails to explain how the government's transparency "[in]adequately disclos[ed] the extent of [Fitzgerald's] credibility issues[,]" or otherwise resulted in a fundamentally unfair sentencing hearing. (*See* Doc. No. 117-1, at 7.)

Moreover, as already noted, defense counsel thoroughly explored on cross-examination Fitzgerald's bias and his prior false statements, and the Court has already determined that counsel's

21

efforts did not result in ineffective assistance. Additionally, contrary to Crumpler's suggestion, defense counsel was not prevented in the sentencing hearing from pursuing any line of questioning regarding Fitzgerald's trial. She also fails to identify any "evidence" from Fitzgerald's trial that should have been introduced at her sentencing hearing, nor does she explain how such introduction would have altered her sentence. Again, the Court weighed Fitzgerald's testimony at the hearing in light of his prior trial testimony and statements and his incentive to testify, and found him to be credible, as discussed above.

Crumpler is not entitled to relief on these claims, and they are denied.

### 3. Denial of Access to Counsel

Crumpler also alleges that the Court failed to recognize the limited access she had to defense counsel due to the COVID-19 pandemic. As the Court explained when it addressed Crumpler's related ineffective assistance of counsel claim based on access to counsel, Crumpler had reasonable access—in the form of video conferences, telephone conferences, and in-person visits—to her counsel throughout the pendency of this action. While the Court (like all courts across the country) was certainly aware of the restrictions imposed in detention facilities to combat the spread of COVID-19, there was no evidence in this case that Crumpler was denied her constitutional right to communicate with her counsel. The record simply does not support a Sixth Amendment claim premised on the right to communicate with counsel while confined awaiting trial.

Moreover, unlike Crumpler's related ineffective assistance of counsel claim, this Sixth Amendment claim is barred by the plea agreement. (*See* Doc. No. 77 ¶ 20.) The Sixth Circuit has consistently held that plea agreement waivers of the right to appeal, including the right to bring

motions under 28 U.S.C. § 2255, are generally enforceable. *See Slusser v. United States*, 895 F.3d 437, 439 (6th Cir. 2018) (citation omitted); *Cox v. United States*, 695 F. App'x 851, 853 (6th Cir. 2017) (citation omitted). As long as the appeal waiver is made knowingly and voluntarily, courts will enforce the waiver. *See United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017); *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (similar); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (similar).

Here, Crumpler generally waived her right to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. (Doc. No. 77 ¶ 20.) As is the Court's practice, the Court engaged Crumpler in a Fed. R. Crim. P. 11 colloquy, wherein after placing Crumpler under oath, the Court reviewed with her the plea agreement and the rights she was giving up by entering a guilty plea, including the rights she was giving up by means of the waiver provision, in order to insure that she understood those rights, intended to waive those rights, and further intended to change her plea to guilty. (Doc. No. 110, at 13–56.) Additionally, at that time, Crumpler stated that she was not threatened, coerced into pleading guilty, or made any promises in exchange for her guilty plea. (*Id*. at 53–54.) Because Crumpler tendered a knowing, intelligent, and voluntary guilty plea (and she does not argue otherwise), the waiver provision in the plea agreement is enforceable and serves to bar any waived argument. Accordingly, this Sixth Amendment claim is barred.

### C.  Newly Discovered Evidence

In her third category of claims, Crumpler—once again focusing on Fitzgerald's testimony offered at her sentencing hearing—alleges that "[n]ew evidence further discredits [] Fitzgerald's testimony and calls into question the procedural fairness of the sentencing hearing[.]" (Doc. No.

23

117-1, at 6.) She claims that "documents" reveal that Fitzgerald gave inconsistent accounts of Crumpler's leadership role in the DTO, that Fitzgerald admitted in "unrelated proceedings" that he fabricated his testimony at Crumpler's sentencing hearing to obtain a sentence reduction, and that "evidence" indicates that Fitzgerald was pressured into cooperating with the government. (*Id.* at 6–7.) She fails, however, to identify *any* newly discovered evidence that supports these conclusory accusations.[7]

The dearth of supporting details for these claims fails to satisfy Rule 2 of the Rules Governing Section 2255 Cases, which requires a motion to "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A motion which fails to state the supporting facts is legally insufficient on its face and may be dismissed. *McFarland v. Scott*, 512 U.S. 849, 856, 114 S. Ct. 2568, 129 L. Ed. 2d 666 (1994) (citations omitted). Additionally, a motion to vacate may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts. *See Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. It is well settled that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (citation omitted); *see United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) (similar (quotation marks and citation omitted)); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." (quotation marks and citations omitted)).

Whether these arguments were intended by Crumpler to be stand-alone claims or were

---

[7] In her reply, Crumpler also references a "concealed witness" with knowledge of Fitzgerald's more prominent role in the DTO but fails to identify the witness or the nature of the witness's knowledge. (Doc. No. 122, at 5 (bolding omitted).)

advanced to provide the Court with reason to revisit issues already decided on direct review, Crumpler's conclusory allegations preclude further review by the Court. These claims are, therefore, denied.

## IV.    MOTION TO AMEND/SUPPLEMENT

After the motion to vacate was fully briefed and at issue, Crumpler filed a motion for leave to amend the § 2255 motion/supplement the record. (Doc. No. 123 (Motion to Amend/Supplement).) Contemporaneous with the filing of her motion to amend/supplement, she filed a motion to compel her trial counsel to produce the contents of her client file. (Doc. No. 124 (Motion to Compel).) Crumpler's motion to compel advised that she was seeking transcripts of proceedings and other docket filings, "[a]ll discovery available by Standing Court Order[,]" and copies of all correspondence between Crumpler and her trial counsel. (*Id.* at 1.) The Court directed the Clerk's Office to send Crumpler information explaining the procedure for obtaining transcripts and other publicly filed documents identified in the motion and not contained in her client file. (Order [non-document], 5/8/2025.) The Court also directed the government and trial counsel to respond to the motion to compel. (*Id.*) After trial counsel certified that he had previously supplied Crumpler with all of the materials in her client file to which she was legally entitled (and would, in an abundance of caution, send a second copy of these materials to Crumpler at her facility (*see* Doc. No. 126)), the Court determined that no further action was required on her motion to compel. (Order [non-document], 5/23/2025.)

On May 29, 2025, Crumpler filed a document styled, "Supplement/Amended Briefing for the Plaintiff's 28 U.S.C. § 2255." (Doc. No. 127.) Given that the Court has yet to rule on Crumpler's motion to amend/supplement, the Court construes the filing as a proposed

supplemental or amended brief. Even after receiving this filing, however, the Court is not entirely

clear whether Crumpler is seeking to amend her motion to vacate or to supplement the record.

Accordingly, in an abundance of caution, the Court will address each possibility.

### A. Motion to Amend

A motion to amend a § 2255 motion is governed by Fed. R. Civ. P. 15. 28 U.S.C. § 2242;

*see Oleson v. United States*, 27 F. App'x 566, 568 (6th Cir. 2001) (applying Rule 15 to a § 2255

motion). Per Rule 15(a), a court should "freely give leave" to amend "when justice so requires."

Fed. R. Civ. P. 15(a)(2). "Decisions as to when justice requires amendment are left to the sound

discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc*., 918 F.2d 579, 591 (6th

Cir. 1990) (citation omitted). Despite Rule 15(a)'s "liberal policy of permitting amendments to

ensure the determination of claims on their merits[,]" *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th

Cir. 1987), "leave to amend the complaint may be denied when the motion is the product of undue

delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing

party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous

amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*,

567 F. App'x 438, 443 (6th Cir. 2014). "Amendment of a complaint is futile when the proposed

amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun

Cnty*., 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted).

The Court finds that futility, undue delay, and undue prejudice weigh heavily against

permitting amendment. Much of the proposed amendment merely rehashes arguments relating to

Fitzgerald's credibility and the appropriateness of the Court's application of the leadership role

enhancement under U.S.S.G. § 3B1.1(a). (*See, e.g*., Doc. No. 127, at 5 (observing that "[t]he

26

[g]overnment knew that the witness they would be relying upon was known for committing perjury"), 13–14 (challenging application of leadership role enhancement).) As the Court has already determined, the government did not engage in prosecutorial misconduct when it relied on Fitzgerald's testimony in advocating for the leadership enhancement and defense counsel was not ineffective in its cross-examination of Fitzgerald. (*See supra* III.A.3, B.2.) Similarly, the Court has already found that arguments relating to the application of U.S.S.G. § 3B1.1 are not cognizable on collateral review and are barred because similar arguments were previously raised and decided on direct appeal. (*See supra* III.B.1.) It would, therefore, be futile to permit Crumpler to amend her motion to vacate to revisit these arguments.

Crumpler also attempts to raise several new ineffective assistance of counsel claims, but each claim is entirely without merit and/or belied by the record. First, Crumpler complains that defense counsel was ineffective for failing to move to dismiss the indictment. In particular, she argues Count One was vague and defective because it failed to allege a specific amount of drugs. (Doc. No. 127, at 6–7.) An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (citations omitted). Putting aside for the moment that Crumpler pleaded guilty to Count One (and, in doing so, waived the right to challenge the sufficiency of the indictment), Crumpler's indictment met this standard. In Count One, it charged Crumpler and others with conspiring to "possess with intent to distribute more than 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1),

(b)(1)(A)." (Doc. No. 13, at 1.) Nothing more was required to place Crumpler on notice of the charge, and "counsel's performance did not fall below an objective standard of reasonableness when he construed the complaint as charging [defendant] with conspiring to distribute five kilograms or more of cocaine." *See, e.g., Raglin v. United States*, No. 19-5260, 2019 WL 4415212, at *3 (6th Cir. Sept. 6, 2019); *see also United States v. Williams*, 29 F. App'x 198, 201 (6th Cir. 2001) (defendant was subject to higher penalty provisions of 21 U.S.C. § 841(b)(1)(A) where indictment charged—and the jury convicted—defendant of conspiring to distribute and possess "*in excess of five kilograms* of cocaine[.]" (emphasis in original)).

In a related argument, Crumpler alleges that counsel was constitutionally ineffective because he failed to challenge at sentencing the calculation of the drugs attributed to her. Specifically, she claims that there was factual dispute over the drug amount, and the Court impermissibly relied of Fitzgerald's testimony to resolve the dispute. (Doc. No. 127, at 9.) She also claims that "there was no evidence of any drug quantity." (*Id.* at 10.) The record does not support these contentions. The amount of drugs attributable to Crumpler—27 kilograms of cocaine—was set forth in the factual basis section of the plea agreement. (Doc. No. 77 ¶ 60.) Crumpler signed the plea agreement and initialed the page containing this factual finding. (*Id.* at 13, 17.) Additionally, at the change of plea hearing, Crumpler admitted that "all of the information contained" in the factual basis was accurate, and that she was pleading guilty because she engaged in the conduct set forth in this section.[8] (Doc. No. 110, at 46–48.) Under these circumstances, any

---

[8] Crumpler's open (and sworn) court declarations at the change of plea hearing also preclude her from now arguing that she advised her counsel that she was not guilty of the charges and did not want to sign the plea agreement. (*See* Doc. No. 127, at 2.) It also prevents her from now suggesting that she was "threat[ened] by counsel" into signing the plea agreement. (*See id.* at 3.) In addition to her testimony under oath that she was pleading guilty because she was guilty of the charges, Crumpler represented on the record that she had not been forced, coerced, or threatened into entering a guilty plea. (Doc. No. 110, at 53.)

28

objection by counsel would have been frivolous, and counsel is not ineffective for failing to raise such a challenge. *See, e.g., Williams v. United States*, No. 2:18-cr-148, 2022 WL 4238255, at *4 (E.D. Tenn. Sept. 14, 2022) (counsel was not ineffective for failing to challenge attributable drug amount set forth in plea agreement).

Next, Crumpler alleges that trial counsel was ineffective for failing to conduct a pretrial investigation. (Doc. No. 127, at 3–6, 11–12.) Defense counsel has a duty to conduct reasonable investigations or make a reasonable decision that investigations are unnecessary. *See Sims v. Livesay*, 970 F.2d 1575, 1580–81 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 690–91). Neither Crumpler's conclusory allegation that her counsel did not view her as "worth defending" (Doc. No. 127, at 8), nor her unsubstantiated complaint that counsel simply "chose to work with the Prosecution to obtain a signed plea agreement knowing that there was no intent to investigate" (*id.* at 5), sets forth with particularity facts that support a right to relief under § 2255. *See Worley v. United States*, 2:15-cr-12, 2018 WL 5984202, at *2 (E.D. Tenn. Nov. 14, 2018) ("A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit." (citing *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996))).

Moreover, while Crumpler complains that counsel failed to interview witnesses—whom she claims could have been called at a trial to support her defense—she fails to even identify these witnesses, let alone establish the nature of their anticipated testimony. (*See* Doc. No. 127, at 6, 11.) This falls well short of establishing ineffectiveness. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce[] affidavits or any other evidence establishing what

29

[the witnesses] would have said"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (citations omitted)); *see also Talley v. United States*, No. 1:94-cr-118, 2006 WL 3422997, at *9–10 (E.D. Tenn. Nov. 27, 2006) ("To present a viable ineffective assistance of counsel claim based on an alleged failure by counsel to call a witness to testify at trial, [the petitioner] must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different, more favorable result. . . . The court will not grant any § 2255 relief to [the petitioner] or hold an evidentiary hearing based on the purported testimony of an uncalled witness where [the petitioner] has not bothered to submit supporting affidavits from them." (citations omitted)).[9]

Additionally, Crumpler maintains that her counsel failed to provide constitutionally effective advice during plea negotiations. She alleges that "it was not until the very night before

---

[9] Crumpler also argues that counsel was ineffective for failing to investigate the facts underlying the charge in Count Two of the indictment. Citing *United States v. Miner*, 774 F.3d 336 (6th Cir. 2014), Crumpler suggests that, had her counsel investigated this charge, he would have learned that there was no evidence she was aware of any pending IRS action. (Doc. No. 127, at 12.) Crumpler's reliance on *Miner* is misplaced. There, the Sixth Circuit addressed the elements of 26 U.S.C. § 7212(a), which criminalizes the act of obstructing or impeding the administration of the internal revenue laws. *See Miner*, 774 F.2d at 342 ("The mainstay of Miner's assertions on appeal is his argument that § 7212(a) requires proof that he knew of a pending IRS proceeding when he engaged in the conduct that impeded the IRS's ability to administer the revenue code.") Crumpler, however, was charged with, and eventually pleaded guilty to, conspiracy to launder monetary instruments, a violation of 18 U.S.C. § 1956(h). (*See* Doc. No. 13, at 4; *see also* Doc. No. 97.) It is not an element of § 1956(h) that the individual be the subject of or be aware of any pending IRS action or investigation. *See generally United States v. Quackenbush*, 369 F. Supp. 2d 958, 967 (W.D. Tenn. 2005) (setting forth the elements of substantive money laundering as follows: (1) the use of the funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conducting or attempting to conduct a financial transaction, knowing that the transaction is designed in whole or part to disguise the nature, source, ownership, or control of the proceeds (quotation marks and citation omitted)).

sentencing that [c]ounsel informed [] Crumpler that she was most likely getting a sentence of 17 years." (Doc. No. 127, at 12.) "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). As noted, the same two-part standard for ineffectiveness announced in *Strickland* applies to representation during the guilty plea process. *See Hill*, 474 U.S. at 58–59. To show prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

While Crumpler claims that she was unaware of her potential sentencing exposure until the eve of sentencing, she is bound by her sworn representations to the Court's inquiry at the change of plea hearing establishing that quite the contrary is true. *See Blackledge*, 431 U.S. at 74; *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (noting that, were a defendant not bound by his representation in open court, the plea colloquy process would be rendered meaningless). After placing Crumpler under oath and reviewing with her the rights she was giving up by pleading guilty and the terms of the plea agreement, the Court explored the statutory penalties for the offenses for which she was pleading guilty and the applicable sentencing guidelines. (Doc. No. 110, at 33.) Once Crumpler confirmed that her counsel had, indeed, discussed with her the sentencing guidelines table (*see id*.), the Court reviewed with Crumpler the applicable advisory sentencing guidelines that would inform the Court's sentence and the possible sentencing ranges that could apply, depending on various facts that would be determined at the time the PSR was prepared. (*See id*. at 33–38.) As the Court explained each sentencing scenario, Crumpler indicated

31

that she understood. (*See, e.g., id.* at 37–38 (Crumpler indicating that she understood if the offense level was determined to be 35 and she was and a criminal history of I, the advisory guideline range would be 168–210, which was the range the Court applied at sentencing); *see* Doc. No. 107, at 61.) Even if  counsel had failed to provide information regarding the consequences of her plea (of which Crumpler has provided no evidence), the Court's proper plea colloquy cured any misunderstanding Crumpler may have had about her sentencing exposure. *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (further citation omitted))).

All of Crumpler's proposed ineffectiveness claims are either patently frivolous, belied by the record, or both. It would, therefore, be futile to permit her to amend her motion to vacate to add these claims. Moreover, Crumpler waited one month after the government filed its response—and  a week after she filed her own brief in reply —before she sought leave to amend. By waiting until the present § 2255 motion was fully briefed and at issue to raise claims that were known to her at the time she filed the underlying motion to vacate, Crumpler has unduly delayed in bringing the present motion to amend, and the government would be unduly prejudiced if it were required to address these proposed claims (many of which were the same as those found in the original motion) following amendment. *See also Whiting v. United States*, 22-1890, 2023 WL 2781299, at *2 (6th Cir. Mar. 17, 2023) (finding district court did not err in denying motion to amend § 2255 motion—based on a "combination of undue delay, futility, and undue prejudice" to the

government—where petitioner waited until after the government responded to the § 2255 motion and it was decided to seek leave). Crumpler is not entitled to amend her motion to vacate.

### B. Motion to Supplement

Crumpler's alternative motion to supplement fares no better. Rule 15(d) governs requests to supplement pleadings and provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplement." Fed. R. Civ. P. 15(d). Crumpler is not entitled to supplement because she has not identified a "transaction, occurrence, or event that happened" after the date she filed her motion to vacate. *See id*. All of the arguments and facts she seeks to add involve events that allegedly occurred prior to or during sentencing (and certainly before she filed her § 2255 motion). Crumpler has therefore failed to demonstrate that she is entitled to supplement the record.

### V.      CONCLUSION

For the foregoing reasons, Crumpler's motion to vacate, set aside, or correct her sentence (Doc. No. 117) and her motion to amend her motion to vacate/supplement the record (Doc. No. 123) are denied. Further, the Court has detailed above how Crumpler's claims in her § 2255 motion are without merit and/or are belied by the record such that "reasonable jurists" would not debate the Court's denial of her motion. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Additionally, for the reasons discussed herein, the Court further concludes that "jurists of reason" would not find it "debatable whether the [§ 2255 motion] states a valid claim of the denial of a constitutional right" or that the Court's findings that certain claims are either not cognizable on collateral review, barred by the plea agreement, or alluded to in a

perfunctory manner, thus precluding further review, are "correct[.]" *Id*. Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

     **IT IS SO ORDERED**.

Dated: July 8, 2025

                                         **HONORABLE SARA LIOI**
                                         **CHIEF JUDGE**
                                         **UNITED STATES DISTRICT COURT**