**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-755 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| KHALILAH CRUMPLER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

On May 10, 2023, the Court sentenced defendant Khalilah Crumpler ("Crumpler") to a custody term of 189 months, following her guilty plea to conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). (Doc. No. 97 (Judgment); Minutes of Proceeding [non-document], 5/10/2023; *see* Doc. No. 13 (Indictment).) Crumpler is serving her sentence at Aliceville FCI and has an anticipated release date of September 5, 2032.[1]

Crumpler now seeks a compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 132 (Motion); Doc. No. 133 (*Pro Se* Supplement)). Appointed counsel filed a supplement (Doc. No. 136 (First Counseled Supplement) and a second supplement (Doc. No. 142 (Second Counseled Supplement), as well supporting medical documentation. (Doc. No. 139-1 (Medical Records).) Plaintiff United States of America (the "government") filed an opposition to the motion (Doc. No.

---

[1] https://www.bop.gov/inmateloc/ (last visited 3/30/2026).

144 (Response)), and Crumpler filed a counseled reply. (Doc. No. 145 (Reply).) For the reasons that follow, Crumpler's motion for a compassionate release is denied.

## I.       BACKGROUND

In 2010, Crumpler was stopped by police with $677,660 in her vehicle, representing suspected proceeds from drug trafficking. (Doc. No. 82 (Presentence Investigation Report ("PSR")), at 6 ¶ 14.)[2] In 2014, Crumpler was specifically identified as a target in a federal investigation of a sophisticated drug trafficking organization ("DTO"), in which it was believed that between 2010 and 2019, Crumpler oversaw shipments of substantial quantities of cocaine and other controlled substances into the Cleveland area from Los Angeles. (*Id.* at 5–6 ¶¶ 11–17; *see* Doc. No. 13 (Indictment), at 1.) Through the investigation, the FBI learned that Crumpler employed Cleveland-based FedEx drivers, including Christopher Fitzgerald ("Fitzgerald"), as couriers for the drugs. (Doc. No. 82, at 5–6 ¶ 12.) The drivers, in turn, utilized Pelican cases—hard, plastic cases with a lock—to distribute the drugs along their delivery routes. (*Id.*) *See United States v. Fitzgerald*, 754 F. App'x 351, 355–56 (6th Cir. 2018) (discussing the DTO).

On April 20, 2016, Fitzgerald and two others were charged in connection with the activities of the DTO. (*See* N.D. Ohio No. 1:16-cr-123, Doc. No. 1 (Indictment).) Crumpler was not charged in the 2016 case, which was ultimately assigned to the docket of the undersigned. The case against Fitzgerald and his co-defendants went to trial in February 2017, and the undersigned presided over the jury trial. At the conclusion of the eight-day trial, the jury found the defendants guilty of all charges. (N.D. Ohio No. 1:16-cr-123, Doc. No. 80 (Jury Verdicts).).

The FBI continued its investigation into Crumpler and her drug trafficking activities.

---

[2] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system. Moreover, unless otherwise noted, all docket numbers are to N.D. Ohio No. 1:19-cr-755.

Investigators discovered that after the investigation into Fitzgerald and others became overt in 2015, and even after Fitzgerald's convictions in 2017, Crumpler continued to receive unexplained income that she deposited in the bank accounts of various businesses she owned or controlled. (Doc. No. 77 (Plea Agreement), at 11–13 ¶¶ 38–46, 50–60.).

On December 11, 2019, a grand jury returned a two-count Indictment charging Crumpler with conspiracy to distribute and possess with intent to distribute cocaine, and conspiracy to launder money instruments. (Doc. No. 13; *see* Doc. No. 1 (Complaint), 6/14/2019.) On November 30, 2021, with the benefit of a plea agreement, Crumpler entered a guilty plea to the two charges in the Indictment. (Minutes of Proceedings [non-document], 11/30/2021; Doc. No. 77.) The factual basis and relevant conduct section of the plea agreement detailed Crumpler's extensive leadership role in a DTO that spanned nearly a decade and was responsible for bringing substantial quantities of drugs from California into the Cleveland, Ohio area.[3] (Doc. No. 77, at 9–13 ¶¶ 22–60.) As noted, on May 10, 2023, the Court sentenced Crumpler to a custody term of 189 months.

After an unsuccessful direct and collateral appeal (*see* Doc. No. 113 (Sixth Circuit Decision); Doc. No. 128 (Memorandum Opinion Denying Motion to Vacate)), Crumpler filed the present motion for compassionate release. In her motion, as supplemented, Crumpler cites a number of reasons for early release: this Court allegedly miscalculated her criminal history

---

[3] Fitzgerald testified at Crumpler's sentencing hearing. Fitzgerald testified that he worked at the direction of Crumpler to receive packages of cocaine coming into the Cleveland area. (Doc. No. 107 (Sentencing Hearing Transcript), at 14.) In particular, he testified that Crumpler arranged for the drug shipments from Los Angeles to Cleveland and then scheduled the distribution of the drugs along Fitzgerald's FedEx delivery route. (*Id*. at 14–15.) At Crumpler's direction, Fitzgerald would then hand off the drugs to various individuals along the route. (*Id*. at 14.) According to Fitzgerald, Crumpler had complete control over the deliveries. She determined how, when, and where Fitzgerald would receive payment for the drugs, and what his cut would be for his delivery services. (*Id*. at 14–16.) He also testified that Crumpler manipulated him by directing him to an attorney who (unbeknownst to Fitzgerald) represented Crumpler. The attorney, in turn, presented Fitzgerld with an affidavit to sign swearing that Crumpler was not involved in the drug trafficking conspiracy. Fitzgerald testified that he signed the affidavit because the attorney told him to and that the representations he made in the affidavit exonerating Crumpler were false. (*Id*. at 25–28.)

category under the federal sentencing guidelines, the Federal Bureau of Prisons ("BOP") has failed to properly execute her sentence, she has engaged in rehabilitation, and family circumstances. (Doc. No. 132, at 1.) Her counseled supplement focuses on the last reason, arguing that Crumpler's mother's health concerns necessitate that Crumpler be released because her mother, who is the caregiver of Crumpler's minor children, is no longer able to care for them. Additionally, she represents that her mother and her brother are in need of her care. (*See* Doc. No. 136, at 1, 8.)

The government opposes early release, arguing that Crumpler has failed to establish the existence of an extraordinary and compelling reason, and because the 18 U.S.C. § 3553(a) sentencing factors fail to justify her release. (Doc. No. 144, at 1.) Additionally, the government posits that Crumpler remains a danger to the community. (*Id.*)

## II.     LAW AND DISCUSSION

### A.  Governing Law

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been

lowered by the Sentencing Commission. § 3582(c)(1)–(2).

With respect to compassionate release motions under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13 (as amended), describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

B. **Extraordinary and Compelling Reasons**

    *1. Exhaustion*

Crumpler alleges that she has exhausted her administrative remedies with the BOP, citing a letter from the warden of her facility denying her request for early release. (Doc. No. 136, at 2 (citing Doc. No. 136-1 (Warden Letter))). The government, however, correctly notes that it appears

from the warden's letter that Crumpler's request for early release was limited to the circumstances surrounding her mother's health concerns and the impact they are having on Crumpler's minor children. (Doc. No. 144, at 7; *see* Doc. No. 136-1, at 1 (explaining "[a] review of your PSR reflects that you have two sisters that reside in the Ohio area. Therefore, there are adequate resources to care for your children").) There is case authority supporting the government's position that a defendant must present each ground upon which she seeks early release to the warden before seeking relief from the courts as to that reason. *See United States v. Williams*, 987 F.3d 700, 703–4 (7th Cir. 2021) (finding exhaustion requirement is not met where the defendant sought administrative relief on a different ground than that presented to the court). Nevertheless, because the government concedes that Crumpler has exhausted as to certain reasons, the Court will in this instance presume exhaustion as to all asserted reasons and reach the merits of her motion.

### 2.   *Family Circumstances*

Under U.S.S.G. § 1B1.13(b)(3)(C), "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent[,]" constitutes an extraordinary and compelling reason for early release. In her motion, Crumpler represents that her mother suffers from "acute and chronic medical issues" including high blood pressure, "acute shortness of breath," "uncontrolled hypertension," spinal spinosyns, osteoporosis, "C2 disc damage" in her neck, sleep apnea, "serious leg pain," and "bad knee and knee replacement[.]" (Doc. No. 132, at 9.) She also suggests that her mother has recently suffered two heart attacks and "depends on assistance to walk and is moving into needing assistance to bathe." (*Id.*) In support, she offers a letter from her mother discussing her medical issues (Doc. No. 132-1), as well as copies of her mother's medical records. (Doc. No. 139-1.)

Crumpler has not demonstrated that the situation with her mother, though unfortunate,

meets the policy statement's definition of "extraordinary and compelling reasons," for compassionate release. Crumpler has provided documentation demonstrating that her mother suffers from several serious medical conditions for which she is prescribed mediation and is seen regularly by medical providers. (*See generally* Doc. No. 139-1.) Yet, the records show that her mother has been living with most of these conditions for many years. Indeed, the vast majority of the records submitted are from a time before Crumpler was first incarcerated on the present offenses. (*See id*.) And while she claims that her mother suffered two heart attacks "in the past few years[,]" she points to no records that document those heart attacks as recent occurrences.[4]

In short, Crumpler has merely demonstrated that her mother suffers from medical conditions for which she is under a physician's care. There is nothing in the medical records that demonstrates that she is incapacitated, and nothing beyond Crumpler's unsupported belief to show that her mother "is moving into needing assistance" for tasks like bathing. (*See* Doc. No. 132, at 9.) The reality is that "[m]any if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019); *see United States v. Villasenor*, No. 21-3477, 2021 WL 5356032, at *1 (6th Cir. Nov. 17, 2021) (recognizing that prisoners often have aging and sick parents and that this fact does not necessarily establish an extraordinary and compelling reason). A parent that merely requires assistance is not "incapacitated" as that term is understood in the policy statement. *United States v. Steel*, No. 1:20-cr-13-4, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) (citing, among authority, *United States v. Jones*, No. 13-cr-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18,

---

[4] Further, the only new diagnoses the Court could find in the medical records were for sleep apnea, on August 3, 2023 and November 20, 2023, and lumbar radiculopathy, on May 13, 2025. (*See* Doc. No. 139-1.) The remaining conditions existed at the time of sentencing. It is well settled that conditions existing at the time of sentencing cannot support a subsequent motion for compassionate release. *See Untied States v. Hunter*, 12 F.4th 555, 571 (6th Cir. 2021) (noting that "facts that existed at sentencing" cannot be extraordinary-and-compelling reasons for release).

2021) (noting that "incapacitated" refers to "someone who cannot carry on any self-care and is totally confined to a bed or chair")). Crumpler has failed to demonstrate that her mother suffers from any medical or physical condition that has rendered her incapacitated.

Crumpler has also failed to demonstrate that, if her mother were incapacitated and required a caregiver, she would be the only available caregiver for her. While she offers explanations and supporting documentation demonstrating why her sisters Shawn Bradberry and T'Porcha Florence are unable to care for her mother, Crumpler has not demonstrated why her other adult siblings are similarly unable to provide such care. Specifically, the PSR provides that Crumpler has a brother and sister (Tajuan and Tiffany Bradberry) residing the Cleveland area. (Doc. No. 82, at 13 ¶ 59.) Crumpler offers nothing more than her representations that these individuals are unavailable.[5] *See, e.g., United States v. Putty*, No. 5:19-cr-2, 2024 WL 3066913, at *3 (W.D. Ky. June 20, 2024) (rejecting unsupported conclusion that defendant was the only available caregiver for his family members (citing *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023) ("a mere allegation . . . without more" does not establish an "extraordinary and compelling reason for early release"))). Crumpler has failed to establish that her mother's health, though unfortunate, meets the requirements of § 1B1.13(b)(3).[6] *See, e.g., United States v. Raymore*, No. 1:19-cr-81, 2025 WL 2323560, at *3 (N.D. Ohio Aug. 12, 2025) (denying compassionate release motion where

---

[5] Specifically, Crumpler states, without support, that Tajuan is part of a criminal investigation, and that Tiffany is disabled and unable to even care for herself. (Doc. No. 145, at 2 (citing Doc. No. 132, at 10) (Crumpler's unsupported claim that "[t]here is no other person in the family that can or is in anyway [sic] able to step forward and take on such a task other than" Crumpler).)

[6] Crumpler also avers that she is needed at home to care for her brother, Roy Bradberry, whom she claims is "100% dependent upon the care of others due to his Paranoid Schizoperenia [sic]." (Doc. No. 132, at 9; *see* Doc. No. 142-1 (Roy Bradberry Medical Records).) She further represents that her brother was diagnosed at an early age and had previously relied on their mother for support and care, but that she is no longer able to provide that care. (Doc. No. 132, at 9–10.) To the extent that Roy Bradberry is incapacitated, Crumpler has failed to demonstrate why her brother and sister in the area are unable to serve as caregivers for Roy.

defendant failed "to provide any information regarding his mother's specific health conditions or that would show he is the only available caretaker as required under § 1B1.13(b)(3)(C)").

Crumpler further maintains, however, that her mother's health challenges are also a relevant consideration under § 1B1.1(b)(3)(A), which identifies the "death or incapacitation of the caregiver of the defendant's minor child" as an extraordinary and compelling reason for early release. According to Crumpler, her two minor children were left in the custody of her mother when she began serving her sentencing in this case. (Doc. No. 136, at 6.) She represents that, given her mother's current medical conditions, she is no longer able to care for Crumpler's children. (*Id.*) She underscores that, unlike § 1B1.13(b)(3)(C), the text of § 1B1.13(b)(3)(A) does not state that a defendant must prove that she is the only available caregiver. While the Sixth Circuit has yet to address the issue and district courts within the Sixth Circuit have come down on both sides of the issue, the government has at least acknowledged that § 1B1.13(b)(3)(A) was not amended to specifically include a requirement that a defendant prove she is the only available caregiver for her minor child. (Doc. No. 144, at 9.) *Compare United States v. May*, No. 4:22-cr-494-8, 2024 WL 5170002, at *3 (N.D. Ohio Dec. 19, 2024) ("A plain reading of the Guidelines can only lead to the conclusion that in order to qualify for compassionate release under § 1B1.13(b)(3)(A), a defendant need not show no alternative caretakers exist for their child.") *with United States v. Foster*, No. 5:18-cr-472, 2024 WL 3715442, at *4 (N.D. Ohio Aug. 8, 2024) ("Moving to the second prong, Foster must prove that he would be the only available and suitable caregiver for his son.").[7]

But even assuming Crumpler need not demonstrate she is the only available caregiver for

[7] This Court has previously acknowledged the split of authority, and has observed that it "must construe the words of the policy statement in accordance with their ordinary meaning, and it is difficult to ignore the conspicuous absence of any requirement that a defendant prove that there are no alternative caregivers for his minor child." *United States v. Taylor*, No. 4:11-cr-501, 2025 WL 19872, *4–5 (N.D. Ohio Jan. 2, 2025) (collecting cases).

9

her minor children, she has failed to establish an extraordinary and compelling reason under § 1B1.13(b)(3)(A) because she has not demonstrated that her mother is incapacitated. While § 1B1.13(b)(3)(A) does not define "incapacitation," the BOP's Program Statement 5050.50 defines "incapacitation" to mean that "the family member caregiver suffered a serious injury (e.g., auto accident) or suffers from a serve illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *United States v. Martin*, No. 4:18-cv-260, 2022 WL 2948834, at *2 & n.18 (N.D. Ohio July 26, 2022) (quoting Federal Bureau of Prisons, U.S. Dep't of Just., Bureau of Prisons, No. 5050.50, Program Statement 7-9 (2019)). As previously observed, Crumpler's mother has lived with and has been treating most of the identified medical conditions for years, including during the time-period in which she has served as the caregiver for Crumpler's children. The Court cannot, therefore, conclude that these conditions have left her mother incapable of rendering care for Crumpler's children. And while Crumpler claims that her mother has had to put off knee surgery to care for Crumpler's children (*see* Doc. No. 136, at 6), she fails to explain why her brother and sister residing in the Cleveland area could not care for the children *temporarily* while her mother re-cooperates from surgery.

Crumpler has failed to demonstrate the existence of extraordinary and compelling reasons under §§ 1B1.13(b)(3)(A) or (C).

### 3.  Other Reasons

Crumpler also cites a litany of other reasons that she believes demonstrates the existence of extraordinary and compelling reasons: (1) miscalculation of criminal history; (2) errors by the BOP in calculating Crumpler's credits under the First Step Act and the Second Chance Act; and (3) rehabilitation efforts. (Doc. No. 132, at 1.) A defendant may be able to establish the existence of extraordinary and compelling reasons by identifying "any other circumstance or combination

of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." § 1B1.13(b)(5) ("Other Reasons"). As explained below, none of Crumpler's cited "other reasons," considered either separately or in combination with any other reason, are similar in gravity to those identified in § 1B1.13(b)(1)–(4).

Crumpler's claim regarding the Court's calculation of her criminal history is neither legally nor factually sufficient. Allegations regarding sentencing calculations are not cognizable in a compassionate release motion. *See United States v. West*, 70 F.4th 341, 347–48 (6th Cir. 2023) ("sentencing errors cannot provide an 'extraordinary and compelling' reason for compassionate release" (collecting cases)); *see also United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022) (finding a defendant cannot use compassionate release as an "end run around habeas" (en banc)). Crumpler had an opportunity to raise any sentencing errors on direct and collateral appeal. She failed to do so and, even now, has failed to explain why the Court's determination that she was a criminal history category I, or that her offense level was 35, resulting in an advisory guideline range of 168–210 months, was erroneous. (*See* Doc. No. 107, at 61.)

Crumpler's complaints about the BOP's execution of her sentence—particularly the application of earned time credits—is also not properly brought in a § 3582 motion. "[T]he calculation of a federal prisoner's sentence is reserved for the BOP, and a motion for compassionate release is not the proper vehicle for bringing such a challenge." *See United States v. Connor*, No. 15-cr-20710, 2023 WL 5473637, at *2 (E.D. Mich. Aug. 24, 2023); *United States v. Whitis*, No. 5:17-cr-68, 2023 WL 2947424, at *2 (E.D. Ky. Apr. 14, 2023) (similar). Rather, challenges to the BOP's calculation of sentence and the application of earned time credits must be brought in a habeas petition in the jurisdiction in which the defendant is serving her sentence, after

11

she has exhausted her administrative remedies.[8] *See United States v. Muhammad*, No. 09-cr-20491, 2024 WL 499520, at *1 (E.D. Mich. Feb. 8, 2024) (citing *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993); *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003)); *United States v. Massey-Lovejoy*, 1:19-cr-184, 2024 WL 712348, at *2 (N.D. Ohio Feb. 21, 2024) (citations omitted); *see also United States v. White*, 1:19-cr-348, 2022 WL 2789360, at *1 (N.D. Ohio July 15, 2022) ("By challenging the BOP's calculation of his jail-time credit, White is attacking the execution of his sentence. Consequently, he must file a habeas petition under § 2241 in the district in which he is being confined." (citations omitted)).

Finally, Crumpler points generally to her rehabilitation efforts, arguing (without documentation) that "she has done all she can to rehabilitate and come out better than she came in to prison." (Doc. No. 132, at 10 (internal quotation marks omitted).) Section 1B1.13(d) provides, in part, that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). *See generally Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020). While rehabilitation can, in combination with other circumstances, be considered in support of a request for a sentence reduction, *see* § 1B1.13(d), Crumpler's unsupported argument that she has done "all she can" falls well short of supporting a claim for early release. *See also United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary.").

For all of the foregoing reasons, Crumpler has failed to demonstrate the existence of

---

[8] To the extent Crumpler claims that the BOP has determined that she is not eligible for good-time credits (*see* Doc. No. 132, at 4), this does not seem to be true. When appointed counsel first supplemented Crumpler's motion, the BOP website reflected that Crumpler's anticipated release date was September 25, 2032. (*See* Doc. No. 136 (filed 2/10/2026).) By the time the government filed its response, the BOP had revised the website to reflect that Crumpler's anticipated release date was September 10, 2032. (*See* Doc. No. 144, at 5 (filed 3/18/2026).) The Court's most recent visit to the BOP's website on March 30, 2026, reflected that Crumpler's anticipated release date is now September 5, 2032. It would appear that the BOP is regularly crediting Crumpler with earned time credits.

extraordinary and compelling reasons supporting early release.

### C.  Section 3553(a) Sentencing Factors

But even if Crumpler had cleared the initial hurdle of establishing extraordinary and compelling reasons, a reduction of her prison term would not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors). The nature and circumstances of Crumpler's offenses are serious. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Crumpler held a leadership role in a nearly decade-long drug trafficking conspiracy that was responsible for bringing significant quantities of dangerous controlled substances into the Cleveland, Ohio area. (*See* Doc. No. 82, at 5–8 ¶¶ 10–25.) As the Court determined at sentencing, this was a sophisticated drug operation, and Crumpler controlled nearly every aspect of it, including the sourcing of the product from California, the processing and packaging of the product, and its distribution and delivery. (Doc. No. 107, at 62–64.) Crumpler also owned and controlled multiple business, which she used to conceal the proceeds of the drug enterprise. (*Id*. at 64.) In short, she was integral to the DTO's success, and she continued to operate it even after other members of the organization had been arrested. The seriousness of Crumpler's conduct warrants a significant prison term.

As the government concedes, Crumpler's criminal history is minimal and resulted in a determination at sentencing that she was a criminal history category I. (Doc. No. 144, at 15.) Nonetheless, her criminal history score and category assignment are not entirely reflective of Crumpler's past criminal activity as she admitted at the guilty plea hearing that she was a leader of a sophisticated DTO from 2010 to 2019. (*See* Doc. No. 110 (Guilty Plea Hearing Transcript),

13

at 46–47; *see also* Doc. No. 77, at 9–14 ¶¶ 22–61.) Moreover, she continued her criminal behavior even after other members of her organization were targeted, arrested, and tried for their roles in the conspiracy. Additionally, while Crumpler has family ties and support in the area, Crumpler used many of her family members to help shield her criminal actions and further her laundering of the drug trafficking proceeds. (*See, e.g.,* Doc. No. 107, at 64 (noting Crumpler used her sister as a nominee owner of several businesses to conceal her financial ownership of the entities through which she laundered money).) Accordingly, on the whole, Crumpler's personal characteristics also weigh against early release and continue to demonstrate that she remains a danger to the community.[9]

The Court also finds that a sentence reduction would result in sentencing disparities between Crumpler and other members of the DTO, including Fitzgerald and Chaquita Anderson, who held less-substantial roles in the drug conspiracy and received sentences greater than the six years that Crumpler has served to date. (N.D. Ohio No. 1:16-cr-123, Doc. No. 135 (Fitzgerald Judgment) (original custody sentence of 188 months); Doc. No. 137 (Anderson Judgment) (custody sentence of 108 months).)

The Court has considered Crumpler's family circumstances—including the health concerns of her family members and the needs of her minor children—and her largely unsubstantiated claims of rehabilitation. But after considering all the factors, the Court determines that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses,

---

[9] As the government correctly observes, the Sixth Circuit twice concluded that Crumpler posed a danger to the community. (Doc. No. 43 (order denying appeal from district court's detention order pending trial); *United States v. Crumpler*, No. 23-3457, (Sixth Cir. Nov. 11, 2023), Doc. No. 27, at 2 (denying motion for release pending appeal, noting defendant failed to demonstrate that she is not a danger to others)).

afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that Crumpler poses a danger to the community.

## III.    CONCLUSION

For the foregoing reasons, the Court denies Crumpler's motion, as supplemented, for a compassionate release.

**IT IS SO ORDERED**.

Dated: April 21, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**